IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | CASE NO. BK07-81140-TJM |
| STEVEN GERARD LAPKE and ) | |
| JENNIFER LEIGH LAPKE, ) | CH. 7 |
| ) | |
| Debtors. ) | |

### **MEMORANDUM**

Hearing was held in Omaha, Nebraska, on November 19, 2007, on several motions: a Motion to Dismiss filed by the U.S. Trustee (Fil. #29); a Motion to Dismiss filed by Nebraska State Bank of Omaha (Fil. #34); a Motion to Intervene filed by Nebraska State Bank of Omaha (Fil. #33); an Objection to Exemptions filed by Nebraska State Bank of Omaha (Fil. #21); and Resistances filed by Debtors (Fil. #28, #37, #38, and #39). Bruce Barnhart appeared for Debtors, James Cavanagh appeared for Nebraska State Bank of Omaha, and Jerry Jensen appeared for the U.S. Trustee. Following the hearing, the parties were given the opportunity to submit briefs. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A).

At the commencement of the hearing, the parties collectively requested that this Court address only the preliminary issue of whether the debts of Debtors "are primarily consumer debts" and reserve for another day the remaining issues raised in the motions. Specifically, if the debts are not primarily consumer debts, then the means testing provisions of 11 U.S.C. § 707(b) will not apply to Debtors. On the other hand, if the debts are primarily consumer debts, Debtors must file a means test form and a further hearing needs to be held as to whether a presumption of abuse arises under 11 U.S.C. § 707(b)(2) and/or whether this proceeding should be dismissed as an abuse under 11 U.S.C. § 707(b)(3).

As discussed below, I find that the debts are primarily consumer debts and Debtors are subject to the means testing provisions of 11 U.S.C. § 707(b).

### *Facts*

The relevant facts are not in dispute and are as follows:

1. Debtor Steven Lapke is a medical doctor who did business as a professional corporation under the name of Family Health and Wellness, P.C., which entity was formed under the laws of the State of Nebraska on March 25, 2005.

2.      On or about March 3, 2006,[1] Dr. Lapke entered into a lease with Daniell's Crossing Professional Plaza, a Nebraska limited liability company, for 5,000 square feet of space to use as a medical office at 3308 Samson Way, Bellevue, Nebraska ("Premises").

3.      The lease identifies the tenant as "Family Health and Wellness, a limited liability company." However, the signature block identifies the entity as a corporation and is signed by Steven G. Lapke as "an authorized representative." Further, there is a Personal Guaranty following the signature block which guarantees to the landlord the full payment of rent and other amounts due under the lease and is signed by Steven G. Lapke.

4.      Despite the inconsistent references in the lease, the parties agreed at the hearing that the lease is the personal obligation of Steven G. Lapke.

5.      The lease was for an initial term of 60 months commencing August 1, 2006, at a base rental amount of $16.50 per square foot. Thus, the annual base rental is $82,500.00, or $6,875.00 per month.

6.      In addition to base rent, the tenant is also obligated to pay a pro rata share of all costs, expenses, and obligations relating to the Premises and the real estate on which it is located during the term.

7.      Debtors filed this Chapter 7 petition on June 8, 2007. Since Debtors take the position that their debts are not primarily consumer debts, they did not file Form 22A, the means test form, to determine whether a presumption of abuse arises under 11 U.S.C. § 707(b)(2).

8.      According to the affidavit of Steven Lapke (Fil. #50), on the date of bankruptcy filing, Debtors had consumer debts in the total amount of $937,255.00. Not counting any indebtedness related to the lease, Debtors owed non-consumer debt in the amount of $612,625.00. For purposes of this hearing, neither Nebraska State Bank nor the U.S. Trustee disputes those figures.

9.      According to Dr. Lapke, on the date of bankruptcy filing, he owed the following amounts related to the lease:

---

[1] The March 3, 2006, agreement is the only copy of a lease agreement offered into evidence. However, at various times the parties have referred to a lease agreement dated December 1, 2006. *See* Affidavit of Jolene Roberts dated August 23, 2007 (Fil. #46), Affidavit of Steven Lapke dated September 19, 2007 (Fil. #49), and a demand letter from the landlord dated May 25, 2007 (attached as Exhibit A to Steven Lapke Affidavit (Fil. #49)). However, since the March lease is the only lease in evidence, it will be presumed to be the applicable lease in this proceeding.

| | |
|---|---:|
| John and Jolene Roberts, lease | $785,583.02 |
| Jolene Roberts Daniell's Crossing Professional Plaza, loan | 36,433.00 |
| Jolene Roberts Daniell's Crossing Professional Plaza, design costs | 19,681.00 |
| Total of Debts to Roberts/Daniell's Crossing | $841,697.02 |

10.     Although it is not entirely clear from Dr. Lapke's calculations, it appears that the purported lease debt is based upon the calculation of the total amount of base rent due over 10 years (the five-year initial term of the lease and a five-year option period), plus estimated operating expenses of $17,345.00 per year for 10 years, plus prepaid tenant improvement expenses.

11.     Dr. Lapke never took possession of the Premises and defaulted in making the payments due under the lease.

12.     On or about August 16, 2007, the landlord sold the property to Alegent Health, which occupies the Premises for its own use. Alegent Health has not filed a proof of claim in this proceeding and does not appear to claim that any amounts are due and owing under the lease.

13.     According to the landlord, as a result of the sale to Alegent Health, "Daniell's Crossing has mitigated its damages under the terms of the lease and therefore there only remains due and owing from FHW and Dr. Steven Lapke the amount of $92,675.55, with interest and late fees continuing to accrue." In addition, Debtors are obligated to Jolene Roberts under the terms of a promissory note in the amount of $32,865.14.

14.     Nebraska State Bank is now known as Mutual of Omaha Bank.

### *Discussion*

As indicated previously, the sole issue to be decided at this stage is whether the debts of these Debtors are primarily consumer debts. The amendments to the Bankruptcy Code made as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 included substantial modifications to § 707(b). Under § 707(b)(1), a court may dismiss a case filed by an individual debtor whose debts are primarily consumer debts if it finds that the granting of relief would be an abuse of the provisions of Chapter 7. The amendments included the creation of means testing provisions to determine whether a presumption of abuse should arise for such a debtor. However, those means testing provisions apply only to an individual debtor "whose debts are primarily consumer debts." Debtors assert that their lease obligations exceed $800,000.00. Combining that amount with their other non-consumer debt of over $600,000.00 leaves total non-consumer debt of more than $1,400,000.00, which far exceeds their consumer debt of approximately $937,000.00. Thus, Debtors assert that their debts are not primarily consumer debts.

Nebraska State Bank and the U.S. Trustee argue that Debtors have grossly overstated the lease obligations, and when the actual liability remaining under the lease and related obligations is considered, the consumer debt exceeds the non-consumer debt.

For purposes of § 707(b), a debtor's debts are primarily consumer debts if more than half of the dollar amount owed is on consumer debts. *In re Coleman*, 231 B.R. 760, 761 (Bankr. D. Neb. 1999); *In re Shelley*, 231 B.R. 317, 319 (Bankr. D. Neb. 1999); *accord Price v. U.S. Trustee (In re Price)*, 353 F.3d 1135, 1139 (9th Cir. 2004); *In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988); *In re Beacher*, 358 B.R. 917, 920 (Bankr. S.D. Tex. 2007); *In re Snyder*, 332 B.R. 641, 643 (Bankr. M.D. Fla. 2005); *In re Praleikas*, 248 B.R. 140, 144 (Bankr. W.D. Mo. 2000). This calculation is to be made as of the date of bankruptcy filing. *In re Penny*, 297 B.R. 737, 739 (Bankr. C.D. Ill. 2003). The ultimate question to be decided is how much debt did Dr. Lapke owe under the terms of the lease as of the date of bankruptcy filing.

The Nebraska Supreme Court has consistently held that "[r]ent is not payable until it falls due under the terms of a lease, and no suit can be brought for future rent in the absence of a clause permitting acceleration." *Omaha Door Co. v. Mexican Food Mfrs. of Omaha, Inc.*, 232 Neb. 153, 158, 439 N.W.2d 776, 781 (1989). Further, the Nebraska Supreme Court has held that "a landlord has a duty to relet the premises in order to mitigate damages when the tenant abandons the premises prior to the expiration of the lease and that the duty to mitigate requires the landlord to take all reasonable steps to reduce his damages." *Properties Inv. Group of Mid-America v. JBA, Inc.*, 242 Neb. 439, 445, 495 N.W.2d 624, 628 (1993) (citing *S.N. Mart, Ltd. v. Maurices Inc.*, 234 Neb. 343, 451 N.W.2d 259 (1990)).

The lease, at paragraph 14(B), provides as follows:

> Upon the occurrence of an Event of Default by Tenant which is not cured within any applicable cure period, Landlord shall have the right to do any or all of the following:
> . . . (iv) Immediately accelerate all amounts remaining due under the Lease for the then current term (including interest at the default rate provided below), and take all appropriate action to collect such amounts from Tenant. Tenant shall at all times remain liable for such amounts regardless of repossession, termination or reletting of the Premises, subject only to reasonable requirements for mitigation.

Thus, even though the lease does contain an acceleration clause, that clause is subject to the landlord's mitigation obligations. The landlord cannot receive a windfall under Nebraska law. Any amounts due as a result of an acceleration clause will be reduced by amounts that the landlord could recover using reasonable efforts to relet the Premises.

It is clear to this Court that Dr. Lapke did not have a debt owing to the landlord in an amount in excess of $800,000.00 on the date of bankruptcy filing. Although the evidence is unclear as to how much rent and other sums due under the terms of the lease had actually accrued as of the date of bankruptcy filing, it is undisputed that following post-bankruptcy mitigation, the total amount due to the landlord under the terms of the lease (both pre- and post-petition) is approximately $93,000.00. Therefore, no more than that amount could have accrued as of the date of the bankruptcy filing.

Of course, rather than relying upon rent accrued as of the date of bankruptcy filing, Dr. Lapke relies upon the acceleration clause in asserting an obligation for base rent and additional charges for a period of 10 years. It is certainly unique for a *tenant* to argue that a lease acceleration clause should apply, and I am mindful that he is doing so for the purpose of avoiding the means testing provision of revised § 707(b). The initial term of the lease is five years as opposed to the 10-year term that was apparently used in his calculations. The base rent is $16.50 per square foot per year, or $82,500.00 per year for five years, totaling $412,500.00. If that amount is added to the other non-consumer debts of Debtors, their non-consumer debt will exceed their consumer debt.

However, the rent for the remaining term of the lease cannot be accelerated without considering the mitigation obligation. Mitigation of damages is not only a clear obligation of the landlord under Nebraska law, but it is also referenced in the acceleration clause itself. Stated simply, even though the Nebraska Supreme Court has indicated that it might recognize an acceleration clause in a lease, the amount determined to be due pursuant to such a clause will still be subject to the landlord's mitigation obligation.

The question, then, is how much should the accelerated rental amount be reduced to give appropriate effect to the landlord's obligation to mitigate damages through reasonable efforts? Nebraska State Bank and the U.S. Trustee present compelling evidence from the landlord itself showing what actually occurred, albeit post-petition. That is, after all mitigation efforts, the balance remaining due under the terms of the lease is $92,675.55, which is a far cry from the $841,697.00 figure asserted by Debtors.

Of course, it is certainly a challenge for a court to determine how much is actually due on the date of bankruptcy filing when mitigation efforts are expected to occur after that date. It appears that the drafters of the Bankruptcy Code recognized this dilemma and created a special calculation for landlord claims. 11 U.S.C. § 502(b)(6)(A) provides that the claim of a lessor for damages resulting from the termination of a lease of real property is limited to:

> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of —
> (i) the date of the filing of the petition; and
> (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
> (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates[.]

Thus, in this case, the claim of the landlord would be limited to the rent reserved in the lease for a period of one year plus amounts accrued prior to the date of bankruptcy filing. One year of base rent under the lease is $82,500.00. The annual operating expenses are approximately $17,000.00. Thus, one year of total lease obligations add up to approximately $100,000.00. It is unclear how much rent accrued prior to bankruptcy filing, but since the landlord indicated that the total amount remaining due after mitigation efforts is only $93,000.00, certainly the amount accrued

prior to bankruptcy filing cannot exceed that amount. Thus, the maximum claim of the landlord for rents due under the lease would be less than $200,000.00 even if the actual post-petition mitigation efforts were not considered. Even with a landlord claim in that amount, the consumer debt of Debtors would still exceed their non-consumer debt.

Therefore, I find that for purposes of 11 U.S.C. § 707(b), Debtors have primarily consumer debts. Debtors must complete Official Form 22A, the Chapter 7 Statement of Current Monthly Income and Means-Test Calculation.

Separate order to be entered.

DATED: January 23, 2008.

BY THE COURT:

/s/ Thomas L. Saladino
Bankruptcy Judge

Notice given by the Court to:
    Bruce Barnhart
    *James Cavanagh
    *Jerry Jensen

Movant (*) is responsible for giving notice to other parties if required by rule or statute.